UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| PATRICIA DE OLIVEIRA SOUZA LÉLIS BOLIN,<br>MARK C. BOLIN<br><br>　　Plaintiffs,<br><br>　　　　　　v.<br><br>TARGET CORPORATION, d/b/a<br>TARGET STORES INCORPORATED<br><br>Serve: CT Corporation System<br>　　　　4701 Cox Road, #285<br>　　　　Glen Allen, VA 23060<br><br>　　Defendant | Case No. 1:21-cv-178<br><br><br><br>**TRIAL BY JURY IS DEMANDED** |

**COMPLAINT**

**PRELIMINARY STATEMENT**

　　1.　　While shopping at Target Corporation's store in Falls Church, Virginia on February 26, 2019, Patricia De Oliveira Souza Lélis Bolin, a Latina woman of Brazilian descent who is married to a United States citizen, Mark C. Bolin, was profiled and surveilled by Target loss prevention personnel.  Despite making a successful expensive purchase shortly before, when Ms. Lélis Bolin attempted to purchase additional merchandise held out for sale near the store's entrance door, a loss prevention employee forcefully detained her for suspected shoplifting, referring to her by racial and ethnic derogatory remarks in the bargain.  Ms. Lélis Bolin was taken to the store's loss preventions interrogation area, where Target personnel discovered that she had sufficient cash and credit cards to pay for the merchandise in her cart and that she had not concealed any unpaid Target merchandise.  While in the store's loss preventions

ATTORNEY WORK PRODUCT
PRIVILEGED & CONFIDENTIAL

interrogation area, Target personnel unlawfully assaulted and battered Ms. Lélis Bolin, and also unlawfully confiscated her cash.  Target then called police who placed her under arrest and pressed a prosecution for grand larceny with the Fairfax District Attorney.  Ms. Lélis Bolin's grand larceny charge was reduced to a trespass charge.  Ms. Lélis Bolin now seeks compensation from Target and its agents and employees for racial and ethnic discrimination in contracting under federal law, targeted surveillance amounting to harassment on the basis of her race, false imprisonment, malicious prosecution, battery, insulting words, abuse of process, conversion, and intentional infliction of emotional distress in violation of state law.

## PARTIES

2. Patricia De Oliveira Souza Lélis Bolin is a 26-year-old adult resident of Arlington, Virginia.  She is Latina, is a citizen of Brazil, and is a native Portuguese speaker who, at the time relevant to this action, was visiting the United States on a tourist visa. Ms. Lélis Bolin is a well-known figure in her home country of Brazil and at the time of the incident was a former member of the Brazilian Federal Congress and held various roles in prominent political parties in Brazil.

3. Ms. Lélis is now married to United States citizen Mark Bolin. Mr. Bolin is a 31-year-old adult who was engaged to Ms. Lélis Bolin at the time of the events described herein and resides in Arlington, Virginia.

4. Target Corporation is a corporation incorporated and with its principal place of business in the State of Minnesota.  Under the name Target Stores, Inc., it does business in Falls Church, Virginia at its store located at 6100 Arlington Boulevard in Falls Church, VA 22044 in a commercial center referred to as Seven Corners (hereinafter "Seven Corners Target").

ATTORNEY WORK PRODUCT
PRIVILEGED & CONFIDENTIAL

## JURISDICTIONAL AND VENUE STATEMENT

5.  This case arises under 42 U.S.C. §1981 and the court has jurisdiction under 28 U.S.C. §§ 1331, 1332.  The also court has supplemental jurisdiction over Ms. Lélis Bolin's state law claims, which arise out of the identical facts underlying her federal claims, under 28 U.S.C. § 1367.  The amount in controversy exceeds the statutory minimum of $75,000.

6.  Venue is appropriate in Virginia because the events or omissions giving rise to Ms. Lélis Bolin's claims occurred in the Commonwealth of Virginia

## FACTUAL ALLEGATIONS

### A. Target Security

7.  Upon information and belief, Target employs different security measures to prevent shoplifting at its Seven Corners location.

8.  Upon information and belief, the Seven Corners Target's security measures include surveillance cameras that record discrete areas of the store, cameras that loss prevention personnel can operate to track individuals engaging in suspected suspicious behavior, and loss prevention personnel follow suspected shoplifters on foot throughout the store.

9.  Upon information and belief, shoppers entering or exiting the Seven Corners Target must pass through two sets of automatic sliding doors.  To exit the store, shoppers must pass through the interior set of doors, which feeds into a lobby or foyer, and then pass through an exterior set of doors, which feeds into a parking lot.  The two sets of doors are separated by about fifteen feet of carpeted open space stretching beyond the width of the doors.

10.  Upon information and belief, on the inside of the interior set of doors are large security detectors, readily visible to anyone walking into the store.  The detectors set off an audio and visual alarm when merchandise armed with a live security sensor passes through or gets too

**ATTORNEY WORK PRODUCT**
**PRIVILEGED & CONFIDENTIAL**

close.  On information and belief, all merchandise that costs $30.00 or more is equipped with a barcode that functions as a security sensor that will trigger the alarm if not deactivated at the register upon purchase.

  B. **Ms. Lélis Bolin Was Profiled**

  11. On February 26, 2019 at approximately 1:00 pm, Ms. Lélis Bolin entered the Seven Corners Target.

  12. Shortly after Ms. Lélis Bolin entered the store, she proceeded to the electronics department where she purchased, without incident, a Sony PlayStation 4 console, a video game, and a controller for a total cost of $600.99.  When the transaction was completed, Ms. Lélis Bolin received a receipt for these items, and they were placed into Ms. Lélis Bolin's shopping cart.

  13. Ms. Lélis Bolin proceeded to continue shopping and subsequently placed in her shopping cart a tricycle that she intended to purchase for her fiancé's nephew.

  14. Shortly thereafter, Target's employee, Ms. Riley Thomas, approached Ms. Lélis Bolin and accused her of shoplifting the PlayStation 4 console.  When Ms. Lélis Bolin showed her the receipt for the PlayStation 4.

  15. Despite Ms. Thomas' statement that Ms. Lélis Bolin was not stealing, she continued to follow Ms. Lélis Bolin throughout the store as Ms. Lélis Bolin continued shopping.  Ms. Lélis Bolin noticed this, but continued shopping.

  16. While shopping, Ms. Lélis Bolin texted Mr. Bolin, asking that he pick her up from the Target store once she had finished shopping.  At this time, Ms. Lélis Bolin noticed again that the same Target employee was following and watching her.

**ATTORNEY WORK PRODUCT**
**PRIVILEGED & CONFIDENTIAL**

17. When Ms. Lélis Bolin finished shopping, she proceeded to a self-checkout area where she again noticed that the Target employee was still following and watching her.

18. Ms. Lélis Bolin was unfamiliar with self-checkout machines, so she sought the assistance of another Target employee. The Target employee assisted Ms. Lélis Bolin and informed her that her transaction for the items in her cart was completed.

19. After the transaction was complete, Ms. Lélis Bolin waited inside the store with her purchases for Mr. Bolin to arrive to pick her up. While waiting, Ms. Lélis Bolin left her shopping cart inside the store and proceeded through the first set of automatic doors to see if he had arrived.

**C. Ms. Lélis Bolin Was Apprehended**

20. At this time, a Target employee approached Ms. Lélis Bolin and accused her again of shoplifting.

21. The circumstances did not reasonably permit the conclusion that Ms. Lélis Bolin was shoplifting. She attempted to use to the self-checkout machine but encountered difficulty and subsequently asked for assistance. The first automatic store doors and immediately adjacent to a store security device, which was perfectly visible and which Ms. Lélis Bolin, like most shoppers, understood would immediately alert security to possible theft. Her cart included an unwieldy box containing a toddler's tricycle along with other items that would have been almost impossible to go unnoticed. Ms. Lélis Bolin activities, like those of all shoppers, were being monitored via video surveillance and displayed conspicuously on a screen facing the entrance to the store.

22. The Target employee escorted Ms. Lélis Bolin to the store's interrogation room where she sat in a chair.

**ATTORNEY WORK PRODUCT**
**PRIVILEGED & CONFIDENTIAL**

23.     In the interrogation room, r Ms. Lélis Bolin was asked for her social security number.  Ms. Lélis Bolin responded that she did not have a social security number but did have a passport.

24.     The  Target employee went through the items in Ms. Lélis Bolin's cart and separately combed through her purse. She discovered that Ms. Lélis Bolin had not concealed any Target merchandise in her purse and the purse contained, among other things, Ms. Lélis Bolin's passport, cellphone, her fiancé's car keys, and approximately $1,500 in cash—more than enough to pay for everything she had in her cart. She then asked Ms. Lélis Bolin if the cash was drug money and asked Ms. Lélis Bolin if she ever sold drugs.  Ms. Lélis Bolin's cash was confiscated by Target personnel and never returned to her.

25.     Rather than accept the circumstance as a simple misunderstanding, the Target employee seized the merchandise in Ms. Lélis Bolin's cart and did not let her purchase what she had selected.

26.     Ms. Lélis Bolin tried to request assistance by writing a request in Spanish on a piece of paper for another store clerk, but she refused to read the paper with the help request.

27.     While Ms. Lélis Bolin was detained in the interrogation room, Ms. Thomas said to Ms. Lélis Bolin, among other things, that "Latinos never pay," and she was "marrying an American because you want a green card."

28.     When Ms. Lélis Bolin attempted to stand up, she grabbed and pushed Ms. Lélis Bolin, resulting in multiple bruises on her body.

29.     Ms. Lélis Bolin remained in the interrogation room for approximately one to two hours before a Fairfax County police officer arrived to take her to jail.

30. Ms. Thomas told the police a false account of what transpired: that while observing the overhead cameras she noticed Ms. Lélis Bolin loading a lot of items into her cart and Ms. Lélis Bolin had stuffed cosmetics inside a non-purchased purse from the store, and that while Ms. Lélis Bolin was in the self-checkout line, she only paid for $50.46 worth of the items, but the cart contained around approximately $670 worth of items.

31. Ms. Thomas also told the police officer that Ms. Lélis Bolin had attempted to steal the items in her shopping cart, in addition to additional items that were in the interrogation room that Ms. Lélis Bolin did not have in her shopping cart.

32. According to the police report, the surveillance footage showed "a similar instance of larceny" regarding the PlayStation 4 console Ms. Lélis Bolin purchased, but "will need to be investigated further by loss prevention before charges can be brought." Ms. Lélis Bolin was not charged with theft of the PlayStation 4.

33. On information and belief, all of Ms. Thomas's actions here at issue, which are attributable to Target, were motivated by the racial animus exemplified by his racially and/or ethnically charged comments.

34. Despite her inability to understand what she was signing, Ms. Lélis Bolin signed a paper acknowledging that she was banned from entering Target property, but she refused to a sign a paper admitting that she had shoplifting.

**D. The Criminal Case Against Ms. Lélis**

35. Ms. Lélis Bolin was arrested and ultimately prosecuted for grand larceny.

36. While the case was pending, Ms. Lélis Bolin's attorneys requested from Target the surveillance videos of Ms. Lélis Bolin in the store and of her in the interrogation room from February 26, 2019.

ATTORNEY WORK PRODUCT
PRIVILEGED & CONFIDENTIAL

37. Rather than produce the entire surveillance in full, Target selectively retained and produced surveillance of Ms. Lélis Bolin in the store and separate video of Ms. Lélis Bolin going through the self-checkout process.

38. Furthermore, according to Target employee, Jason, the surveillance video of the interrogation room was "not retained" because it was "outside of the 14-day retention" period.

39. The felony grand larceny against Ms. Lélis Bolin was reduced and amended to a misdemeanor trespass charge.

40. Since the events described above, Ms. Lélis Bolin, formerly a member of the Brazilian Parliament has had to forgo her significant roles in Brazil's PROS-PP political party and has been unable to return home. The events were reported in the Brazilian media and impacted negatively on Ms. Lélis Bolin's reputation. Ms. Lélis Bolin remains unable to travel to Brazil due to the misdemeanor trespass charge she was forced into accepting, despite her innocence. Indeed, she could not travel to Brazil in July 2020 to attend to her father on his deathbed after he was diagnosed with COVID-19 infection.

ATTORNEY WORK PRODUCT
PRIVILEGED & CONFIDENTIAL

## CAUSES OF ACTION

### Count I: Violation of 42 U.S.C. §1981

41.Ms. Lélis Bolin repeats and realleges each and every allegation set forth in Paragraphs 1 through 39 of this Complaint.

42.By holding out merchandise for sale to the public, Target entered into a proposed contractual relationship with its patrons, including Ms. Lélis Bolin, whereby Target would sell them merchandise in exchange for money. Although Ms. Lélis Bolin intended to purchase merchandise, defendants, having racially profiled her, refused to sell to her while subjecting her to racially and ethnically derogatory remarks. By doing so, defendants interfered with her right to contract freely without regard to race and/or ethnicity, in violation of 42 U.S.C. §1981.

### Count II: Violation of Virginia Hate Crimes Act

43.Ms. Lélis Bolin repeats and realleges each and every allegation set forth in Paragraphs 1 through 41 of this Complaint.

44.By surveilling, apprehending, detaining and otherwise harassing Ms. Lélis Bolin with no cause, and subjecting her to racist and ethnic remarks. Target, through its agent Ms. Thomas, harassed Ms. Lélis Bolin on the basis of her race, in violation of Code of Va. §8.01-42.1.

### Count III: False Imprisonment

45.Ms. Lélis Bolin repeats and realleges each and every allegation set forth in Paragraphs 1 through 40 of this Complaint.

46.By initially detaining her without cause and continuing to detain her after their investigation revealed that she had sufficient money to cover the purchase and that she had not concealed merchandise in her purse, defendants caused Ms. Lélis Bolin to be falsely imprisoned.

ATTORNEY WORK PRODUCT
PRIVILEGED & CONFIDENTIAL

### Count IV: Malicious Prosecution

47. Ms. Lélis Bolin repeats and realleges each and every allegation set forth in Paragraphs 1 through 45of this Complaint.

48. By their actions set forth above, defendants caused the malicious prosecution of Ms. Lélis Bolin.

### Count V: Abuse of Process

49. Ms. Lélis Bolin repeats and realleges each and every allegation set forth in Paragraphs 1 through 47 of this Complaint.

50. By their actions set forth above, defendants' action in providing false information, so that an arrest warrant would be issued and served on the Ms. Lélis Bolin, were brought by an ulterior purpose and were intended as acts in the use of the process not proper in the regular prosecution of the criminal proceeding against Ms. Lélis Bolin.

### Count VI: Intentional Infliction of Emotional Distress

51. Ms. Lélis Bolin repeats and realleges each and every allegation set forth in Paragraphs 1 through 49 of this Complaint.

52. The defendants' action in providing false information, so that an arrest warrant would be issued and served on Ms. Lélis Bolin, were intentional or reckless, were outrageous and interoperable in that the defendants' action offended generally accepted standards of decency and morality.

53. As a result of defendants' action set forth above, Ms. Lélis Bolin suffered severe emotional distress, due in part to her inability to return to Brazil as a result of the prosecution caused by defendants.

**ATTORNEY WORK PRODUCT**
**PRIVILEGED & CONFIDENTIAL**

### Count VII: Insulting Words

54. Ms. Lélis Bolin repeats and realleges each and every allegation set forth in Paragraphs 1 through 452 of this Complaint.

55. Defendants' insulting words, in the context and under the circumstances in which they said, tend to violence and breach of the peace. Like any reasonable person, Ms. Lélis Bolin was humiliated, disgusted, angered and provoked by the defendants' insulting words.

56. Defendants' words are fighting words, which are actionable under § 8.01-45 of the Virginia Code (1950), as amended.

57. As a direct result of defendants' insulting and demeaning words, Ms. Lélis Bolin suffered actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, mental suffering, injury to her reputation, special damages, costs, and other out-of-pocket expenses.

### Count VIII: Assault and Battery

58. Ms. Lélis Bolin repeats and realleges each and every allegation set forth in Paragraphs 1 through 56 of this Complaint.

59. Defendants' actions in intentionally, willfully grabbing and pulling Ms. Lélis Bolin, constituted and caused an attempted and completed intentional, unlawful, unwanted and harmful touching (and/or touchings), without legal justification, and constituted a battery.

60. As a direct and proximate result of the battery by defendants', Ms. Lélis Bolin sustained the injuries and damages as set forth above in this Complaint.

### Count VIII: Conversion

61. Ms. Lélis Bolin repeats and realleges each and every allegation set forth in Paragraphs 1 through 59 of this Complaint.

**ATTORNEY WORK PRODUCT**
**PRIVILEGED & CONFIDENTIAL**

62. By confiscating Ms. Lélis Bolin's cash, defendants wrongfully exercised or assumed authority over Ms. Lélis Bolin's goods, specifically the $1,500 in cash, and thus, deprived Ms. Lélis Bolin of the possession of this property.

63. Defendants' confiscation of this cash was an act of dominion wrongfully exerted over property in denial of Ms. Lélis Bolin's ownership rights, or inconsistent with it.

64. Defendants' actions were intentional, wanton, oppressive, reckless, and taken with such malice as implies a spirit of mischief, or criminal indifference to civil obligations.

65. Defendants' actions were also taken with misconduct or recklessness or negligence as evinces a conscious disregard of Ms. Lélis Bolin's rights.

66. Defendants also knew or should have known at the time she was the owner of the aforementioned property and not that of Target or any of its employees, that this action would cause Ms. Lélis Bolin's injury.

## Count IX: Mr. Bolin's Loss of Consortium

67. As a result of the above actions by Defendants, Ms. Lélis Bolin suffered extreme mental distress and Mr. Bolin, her fiancé and later-husband suffered loss of consortium with Ms. Lélis Bolin.

**ATTORNEY WORK PRODUCT**
**PRIVILEGED & CONFIDENTIAL**

## PRAYER FOR RELIEF

WHEREFORE, **Patricia De Oliveira Souza Lélis and Mark C. Bolin** move the Court for judgment against Defendants jointly and severally for

a) Compensatory damages in the amount of $3,000,000 (Three million dollars);

b) Punitive damages in the amount of $350,000.00 (Three hundred fifty thousand dollars),

c) Her costs, including reasonable attorney's fees, and

d) Such other relief as is just.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury on all counts.

Dated: February 17, 2021                    Respectfully submitted,

/s/ Fern P. O'Brian
Fern P. O'Brian
VSB #24062
Law Offices of Fern P. O'Brian
9620 Eagle Ridge Drive
Bethesda, Maryland 20817
*Attorney for Plaintiffs*
*Patricia De Oliveira Souza Lélis and Mark C. Bolin*

Page **13** of **14**

**ATTORNEY WORK PRODUCT**
**PRIVILEGED & CONFIDENTIAL**

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of February 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system. I will then send the document and a notification of such filing (NEF) to the following party via FedEx:

CT Corporation System
4701 Cox Road, #285
Glen Allen, VA 23060

/s/ Fern P. O'Brian
Fern P. O'Brian
VSB #24062
Law Offices of Fern P. O'Brian
9620 Eagle Ridge Drive
Bethesda, Maryland 20817
*Attorney for Plaintiffs*
*Patricia De Oliveira Souza Lélis and Mark C. Bolin*