IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PATRICIA DE OLIVEIRA SOUZA LELIS, BOLIN, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 1:21-cv-00178 (AJT/TCB) |
| TARGET CORPORATION, *d/b/a Target Stores Incorporated*, | ) ) ) ) |
| Defendant. | ) ) ) |

## <u>ORDER</u>

Plaintiff Patricia De Oliveira Souza Lélis Bolin ("Plaintiff") has sued Target Corporation, d/b/a Target Stores Incorporated ("Defendant" or "Target") for violations of the Virginia Hate Crimes Act, Va. Code § 8.01-42.1 (Count I); assault and battery (Count II); conversion (Count III); intentional infliction of emotional distress (Count IV); and insulting words under Va. Code § 8.01-45 (Count V). Defendant has moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim as to Counts IV (intentional infliction of emotional distress) and Count V (insulting words). *See* [Doc. No. 20] (the "Motion" or "Mot."). For the reasons below, the Motion is **GRANTED** and Counts IV and V are dismissed.

## I. BACKGROUND

The Amended Complaint alleges the following:

Plaintiff is a Brazilian national living in Virginia. [Doc. No. 17] ("Am. Compl.") ¶ 1. On February 26, 2019, Plaintiff entered one of Defendant's store in Falls Church, Virginia. Am. Compl. ¶ 5. Plaintiff purchased a Sony PlayStation 4 console, a video game, and a controller for a total cost of $600.99, received a receipt, and placed the items in her cart. *Id.* ¶ 6. She

continued shopping and called her mother in Brazil. *Id.* ¶¶ 7-8. While speaking in Portuguese on her phone, Riley Thomas ("Thomas"), an employee of Defendant, approached Plaintiff and told her to stop speaking so loudly and that it was not polite to speak Spanish in the United States and to speak English. *Id.* ¶¶ 9-10. As Plaintiff continued to shop, she was again approached by Thomas, who accused Plaintiff of not paying for the PlayStation 4 console she had purchased earlier. *Id.* ¶ 12. Plaintiff showed Thomas the receipt for the purchase and upon review of the receipt, Thomas made a rude comment to Plaintiff, which Plaintiff cannot recall, and proceeded to follow Plaintiff throughout the store. *Id.* ¶¶ 13-14. Plaintiff finished her shopping and proceeded to the self-checkout aisle. *Id.* ¶ 15. As Plaintiff was leaving the store, Thomas called out for Plaintiff to stop. *Id.* ¶¶ 16. Thomas proceeded to grab Plaintiff's hair, arm, and forcibly pushed Plaintiff into a small office. *Id.* ¶ 17.

Thomas then left the office and returned with Plaintiff's shopping cart. *Id.* ¶ 18. Upon Thomas' return to the small office, she proceeded to open and remove the contents of Plaintiff's purse, which contained, among other things, Plaintiff's passport, cellphone, and approximately $1,500 in American currency. *Id.* ¶ 19. After discovering the $1,500.00 in Plaintiff's purse, Thomas asked Plaintiff if the $1,500 was drug money, told Plaintiff that she had the face of a Latina involved in drug trafficking, and asked Plaintiff if she ever sold drugs. *Id.* ¶ 20. Thomas also told Plaintiff that "Latinos never pay." *Id.* ¶ 20. Plaintiff, who at that time had a limited ability to speak and understand English, responded that she had a husband, a term she believed at the time was synonymous with fiancé. *Id.* ¶ 22. In response, Thomas told Plaintiff that she only wanted to marry an American to obtain a Green Card. *Id.* ¶ 23.

Thomas proceeded to accuse Plaintiff of stealing a number of items that were located in the small office, of which Plaintiff had never seen before and did not place in her shopping cart

2

or otherwise attempt to purchase at Target. *Id.* ¶ 24. When Plaintiff attempted to stand up, Thomas grabbed and pushed Plaintiff, resulting in multiple bruises on her body, and attempted to forcibly tie Plaintiff's wrist to the chair with a zip-tie. *Id.* ¶¶ 25-26. Plaintiff attempted to get assistance by writing a request to speak with someone in Spanish on a piece of paper, but Thomas refused to read the paper or otherwise address Plaintiff's plea for help. *Id.* ¶ 27.

Shortly thereafter, Thomas showed another Target employee, who had just entered the small office, the $1,500.00 and stated that it was "very strange" that Plaintiff had the money in her purse. *Id.* ¶ 28. The two employees confiscated and never returned Plaintiff's $1,500 in cash. *Id.* ¶ 29. Plaintiff remained int the small office for one to two hours before a Fairfax County police officer arrived to arrest her for allegedly attempting to leave Target without paying for all of the merchandise in her shopping cart, at which point, Thomas informed the officer that Plaintiff attempted to steal the items in her cart and Plaintiff was arrested. *Id.* ¶¶ 30-32. Plaintiff was later prosecuted for larceny. *Id.* ¶ 32.

On February 17, 2021, Plaintiff filed her Complaint;[1] and on May 26, 2021, her Amended Complaint.[2]

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1994). A claim should be dismissed "if, after accepting all well-

---

[1] The original complaint asserted the following causes of action: violation of 42 U.S.C. § 1981 (Count I); violation of Virginia Hate Crimes Act, Va. Code § 8.01-42.1 (Count II); false imprisonment (Count III); malicious prosecution (Count IV); abuse of process (Count V); intentional infliction of emotional distress (Count VI); insulting words under Va. Code § 8.01-45 (Count VII); assault and battery (Count VIII); conversion (Count IX); and Plaintiff's husband's loss of consortium (Count X). *See generally* [Doc. No. 1]. Defendant filed a Motion to Dismiss, which the Court granted on May 12, 2021 with limited leave to amend. [Doc. No. 16].
[2] The Motion has been fully briefed [Doc. Nos. 24, 28]; and the parties waived a hearing on the Motion. [Doc. No. 22].

3

pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted), and the court may consider exhibits attached to the complaint, *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991).

Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*; *see also Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007). In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face"); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). As the Supreme Court stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the conduct alleged."

### III. ANALYSIS

#### A. Intentional Infliction of Emotional Distress (Count IV)

In Virginia, a plaintiff making a claim for the tort of intentional infliction of emotional distress ("IIED") must prove that "(1) the wrongdoer's conduct was intentional or reckless; (2)

the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe." *Almy v. Grisham*, 273 Va. 68, 77 (2007) (citing *Womack v. Eldridge*, 215 Va. 338 (1974)). To satisfy the outrageous or intolerable element, the behavior must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Almy*, 273 Va. at 78 (internal quotations and citation omitted). Conduct that is "merely 'insensitive and demeaning'" is insufficient. *Williams v. Agency, Inc.*, 997 F. Supp. 2d 409, 414 (E.D. Va. 2014) (citing *Harris v. Kreutzer*, 271 Va. 188, 205 (2006)). While the severity of emotional distress is difficult to define, the alleged distress should be "so severe that no reasonable person could be expected to endure it." *Id.* at 415 (quoting *Harris*, 271 Va. 188, 205 (2006) and *Russo v. White*, 241 Va. 23, 27 (1991)). "Because of problems inherent in proving a tort alleging injury to the mind or emotions in the absence of accompanying physical injury, the tort of intentional infliction of emotional distress is 'not favored' in the law." *Almy*, 273 Va. at 77 (internal citations omitted). As such, a Plaintiff must allege all facts necessary to establish IIED to withstand a motion to dismiss. *Id.*

Plaintiff claims that the following conduct caused her to suffer from IIED: (1) interrupting Plaintiff's phone call with her mother to tell Plaintiff she needed to speak English, Am. Compl. ¶¶ 9-10; (2) accusing Plaintiff of stealing a PlayStation 4 console in her shopping cart, *id.* at ¶ 12; (3) continuing to follow Plaintiff throughout the store although Plaintiff had presented a receipt confirming that she had purchased and paid for the PlayStation 4 console, *id.* at ¶ 14; (4) asking Plaintiff in an interrogation room if the $1,500 found in her purse was drug money, *id.* at ¶ 20; (5) telling Plaintiff she had the face of a Latina involved in drug trafficking,

*id.*; (6) asking Plaintiff if she ever sold drugs, *id.*; (7) telling Plaintiff that "Latinos never pay," *id.*; (7) telling Plaintiff that she only wanted to marry an American to obtain a Green Card, *id.* at ¶ 23; and (8) falsely reporting to the police that Plaintiff had stolen a number of items that were never in Plaintiff's shopping cart, *id.* at ¶ 24. Plaintiff alleges in conclusory fashion that these acts "maintain a cause of action for intentional infliction of emotional distress" because they were "outrageous, violated accepted standards of decency and morality, and caused Plaintiff to suffer severe emotional distress, including insomnia, nightmares, fatigue, difficulty concentrating, rapid heartbeat, anxiety, depression, being afraid of going to markets alone, and being easily frightened." [Doc. No. 24] (the "Opposition" or "Opp'n") at 4.

Plaintiff's claim for IIED fails as a matter of law for several reasons. As an initial matter, the alleged conduct falls far short of the conduct courts have considered outrageous or intolerable for the purposes of an IIED claim; and Plaintiff points to no case that found comparable conduct sufficient. *See generally* Opp'n. Instead, Plaintiff essentially asks the Court to lower the threshold for establishing what constitutes "outrageous or intolerable conduct" in light of "the rapidly evolving social standards in the Commonwealth of Virginia, and the extent to which those evolving standards have altered perceptions of conduct which might not have been previously [sic] been considered so extreme and outrageous as to meet the intentional infliction of emotional distress pleading threshold." Opp'n at 4-5. "These evolving standards," Plaintiff contends, "should be particularly relevant when this Court considers, as in this case, conduct motivated by alleged racial and/or ethnic prejudice." *Id.* This case is governed by Virginia law, which under *Erie*,[3] is binding on the Court and the Court finds nothing that would suggest that the Supreme Court of Virginia would alter its established precedents concerning what constitutes

---

[3] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

"outrageous or intolerable conduct" or that the alleged statements and conduct would constitute "outrageous or intolerable conduct." While the alleged conduct may be fairly characterized as insensitive and demeaning, "Virginia courts have held that insensitive and demeaning conduct, including verbal abuse, does not rise to the level of extreme or outrageous conduct required to state a claim for intentional infliction of emotional distress." *Baudean v. Pearson Educ., Inc.*, 2015 WL 3651199, at *5 n.16 (E.D. Va. June 11, 2015) (internal quotations and citations omitted); *see also Burke v. AT & T Tech. Servs. Co.*, 55 F. Supp. 2d 432, 441 (E.D. Va. 1999) (finding that "insidious and unacceptable" racial discrimination leading to demotion and termination did not constitute "atrocious" conduct to sustain a claim for IIED) (quoting *Russo*, 241 Va. at 23); *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 759–60 (E.D. Va. 2016) ("Under Virginia law, liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). Similarly, mere false allegations to the police is not enough to rise to the level of outrageous or intolerable. *Fields v. Sprint Corp.*, 2017 WL 4053761, *4 (E.D. Va. 2017). Even in situations where defendants have intentionally lied to the police to obtain an arrest, courts have found the conduct was not outrageous or intolerable. *See, e.g., Almy*, 273 Va. at 78; *Warner v. Buck Creek Nursery*, 149 F. Supp. 2d 246 (W.D. Va. 2001).

Plaintiff has also alleged that she suffered "insult, pain, embarrassment, humiliation, mental suffering, injury to her reputation, and severe emotional distress." Am. Compl. ¶ 51. However, Plaintiff does not allege any particular harm or loss other than that she obtained professional counseling as a result of Defendant's actions. *Id.* ¶ 38. Without more, this allegation is not enough to make plausible that the harm suffered by Plaintiff is severe enough for the purposes of an IIED claim. *See Harris*, 271 Va. at 204–05 (stating plaintiff failed to

alleged facts sufficient to satisfy the severity element based on allegations that she suffered from anguish, nightmares, difficulty sleeping, extreme loss of self-esteem and depression, which required additional psychological treatment and counseling as a result of another actor's outrageous conduct because the conduct does not necessarily establish that the distress suffered by a plaintiff is beyond what a reasonable person can be expected to endure).

For the above reasons, Plaintiff has failed to allege facts that make plausible her IIED claim and has therefore failed as a matter of law to state a claim in Count IV.

### B. Insulting Words pursuant to Va. Code § 8.01-45 (Count V)

Virginia's insulting words statute states, in its entirety, that "[a]ll words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code § 8.01-45; *Allen & Rocks, Inc. v. Dowell*, 252 Va. 439, 443 (1996). Whether words are insulting and tend to incite violence is determined by the usual construction of the words and their common acceptance in the community." *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 668 (E.D. Va. 2015). However, "insult alone is not sufficient under the insulting word statute: a plaintiff must also plead sufficient facts such that a reasonable juror could find that the words have a 'clear and present tendency to incite violence." *Id.* In order to properly state a claim for insulting words in this Court, Plaintiff must allege the exact statements made by the defendant that constitute such insults. *Id.* at 670 ("[T]he Court concludes that insulting words claims must state the insulting language *in haec verba* in federal as well as state court.").

In the Amended Complaint, the only specific statements alleged were that "Latinos never pay," Plaintiff was "marry[ing] an American because you want a green card," "she needed to speak English, as it was not polite to speak Spanish in the United States," the money in her purse

8

was "drug money," and an accusation that Plaintiff stole a number of items. Am. Compl. ¶¶ 10, 20, 23-24, 27. While the alleged comments are certainly insults, they do not objectively have a "clear and present tendency to incite violence." *See Goulmamine*, 138 F. Supp. 3d at 671 (finding that while a "jury could plausibly find that these statements imply professional misconduct or a crime of moral turpitude, such that they are insulting *per se* . . . [h]owever, 'insult' is only half of the insulting words statute, and [the alleged insulting statement] cannot satisfy the other half of the test because it cannot be read as inciting violence or breach of the peace."). For these reasons, Plaintiff has also failed to allege facts that make plausible her insulting words claim and therefore has failed to state a claim as a matter of law in Count V.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

ORDERED that Defendant's Partial Motion to Dismiss [Doc. No. 20] be, and the same hereby is, **GRANTED** and Counts IV and V of the Amended Complaint are **DISMISSED** for failure to state a claim.

The Clerk is directed to forward a copy of this Order to all counsel of record.

_____/s/_____
Anthony J. Trenga
United States District Court

Alexandria, Virginia
August 20, 2021